UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL CRABTREE and ) <br> SUSAN CRABTREE, ) <br>   aka Susan Driscoll, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> _____ ) | CR 07- **07-01054** <br><br> I N D I C T M E N T <br><br> [18 U.S.C. § 371: Conspiracy; <br> 18 U.S.C. § 1343: Wire Fraud; <br> 18 U.S.C. § 1957: Engaging In <br> Monetary Transactions In <br> Property Derived From <br> Specified Unlawful Activity; <br> 18 U.S.C. § 2(a): Aiding and <br> Abetting; 18 U.S.C. § 2(b): <br> Causing An Act To Be Done] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.  GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.  Defendant MICHAEL CRABTREE was an employee of Northrop Grumman Corporation ("NGC") working in its composite materials

//

DOB/dob

department in El Segundo, California. Defendant MICHAEL CRABTREE was responsible for ordering material and supplies for various United States Department of Defense related contracts.

2. Defendant SUSAN CRABTREE, whose maiden name was Driscoll, was the wife of defendant MICHAEL CRABTREE. Defendant SUSAN CRABTREE was employed part-time as a receptionist at Kaiser Southern California Permanente Medical Group in Irvine, California.

3. Advanced West was a sole proprietorship operated by James Cook ("Cook") in Santa Ana, California, that was affiliated with Advanced Composites Group, Inc., a corporation located in Oklahoma. Advanced West was a supplier of composite materials for the aerospace, automobile, medical, and defense-related industries.

4. Delta Composites ("Delta") was a defense contractor located in Houston, Texas.

B.  OBJECTS OF THE CONSPIRACY

5. Beginning in or about September 2004 and continuing through in or about February 2007, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants MICHAEL CRABTREE and SUSAN CRABTREE, also known as Susan Driscoll, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

   a.  to commit wire fraud by using and causing to be used interstate wires for the purpose of knowingly, with intent to defraud, executing a scheme and artifice to defraud as to

material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and the concealment or material facts, in violation of Title 18, United States Code, Section 1343;

    b. to conduct financial transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely wire fraud, knowing that the funds involved represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

C.     MANNER AND MEANS OF THE CONSPIRACY

    6. The objects of the conspiracy were carried out, in part, as follows:

General Scheme

    a. Defendant MICHAEL CRABTREE would order, on behalf of NGC, approximately $2,600,000 of composite materials, specifically, carbon fiber tape and silicone rubber damming material, from Advanced West, knowing that Advanced West would not actually supply the materials.

    b. Defendant MICHAEL CRABTREE would cause NGC to pay for these materials, which as he then well knew would never be supplied, and would direct the proceeds of these fictitious sales to himself.

Fictitious Bids

    c. Defendants MICHAEL CRABTREE and SUSAN CRABTREE would arrange for fictitious bids to be submitted to NGC in order to make it appear that the orders had been placed through NGC's

competitive bidding process.

      d. Defendant MICHAEL CRABTREE would tell his subordinate buyers to request quotes on all orders for carbon fiber tape and silicone rubber damming materials from two companies, Advanced West and Delta.

      e. With regard to Delta, defendant MICHAEL CRABTREE would fraudulently alter contact information for Delta in NGC's database so that all NGC requests for quotes from Delta were sent to the personal residence of defendants MICHAEL CRABTREE and SUSAN CRABTREE, rather than Delta's true corporate headquarters in Houston, Texas.

      f. Defendant SUSAN CRABTREE would then respond to the request for quotes by purportedly issuing bids on behalf of Delta.

      g. With regard to Advanced West, defendant MICHAEL CRABTREE would tell Cook falsely that he intended to supply the ordered product through a company owned by defendant SUSAN CRABTREE's brother-in-law in Florida called Driscoll Enterprises, but that NGC conflict-of-interest rules prevented him from ordering supplies directly from a family relation. Defendant MICHAEL CRABTREE would ask Cook to act as an intermediary for Driscoll Enterprises by issuing quotes to NGC, letting Driscoll Enterprises supply the product, and forwarding payments from NGC to defendant SUSAN CRABTREE, less approximately 10 percent.

      h. When asking Cook to issue a quote to NGC, defendants MICHAEL CRABTREE and SUSAN CRABTREE would provide Cook with a bid amount to be included in Advanced West's quote that

was always lower than Delta's bid, thus insuring that Advanced West would appear to be the winning low bidder for the sale. Cook would then submit the winning bid in the amount provided by defendants MICHAEL CRABTREE and SUSAN CRABTREE in the name of Advanced West.

Non-Delivery of Ordered Product

  i. As defendants MICHAEL CRABTREE and SUSAN CRABTREE well knew, neither Advanced West nor Driscoll Enterprises would deliver the ordered carbon tape or silicone damming material to NGC.

Fictitious Receiving Documents

  j. Defendant MICHAEL CRABTREE would circumvent NGC's product receiving process by claiming that he had either picked up the materials himself at Los Angeles International Airport, or that the materials had arrived at the El Segundo plant prior to the arrival of NGC's receiving personnel.

  k. Defendant MICHAEL CRABTREE would also circumvent NGC's product receiving process by preparing false Advanced West packing slips and persuading subordinate receiving personnel to sign for materials that they had not actually seen.

Payment Via American Express

  l. After the goods purportedly were received, defendant MICHAEL CRABTREE would cause payment to be issued through NGC's American Express procurement payment program. Defendant MICHAEL CRABTREE's subordinate buyers would provide Advanced West with their NGC American Express purchase card numbers. Cook would telephone the Amex Operations Center in

Phoenix, Arizona, in order to obtain authorization to charge the acount. American Express would verify that the funds were available and issue an authorization. The funds would then be electronically debited from American Express accounts and be credited to Advanced West's bank account in Laguna Beach, California.

Transfer of Funds

    m. Once Advanced West had been paid, defendant SUSAN CRABTREE would pick up checks from Cook at Advanced West made payable to "Susan Driscoll" and referencing "Driscoll Enterprises," a fictitious company, on the front of the check.

    n. Defendant SUSAN CRABTREE would deposit the checks into a bank account at Orange County Teacher's Federal Credit Union ("OCTFCU").

    o. Defendants MICHAEL CRABTREE and SUSAN CRABTREE would then spend the fraudulently obtained funds on luxury items, including a new home, a race car, a recreational vehicle/motor home, a luxury box at the Anaheim Honda Center, jewelry, and electronics.

D. OVERT ACTS

    7. In furtherance of the conspiracy and to accomplish its objects, defendants MICHAEL CRABTREE and SUSAN CRABTREE, also known as Susan Driscoll, committed and caused others to commit the following overt acts, among others, within the Central District of California, and elsewhere:

    a. On or about July 19, 2005, defendant MICHAEL CRABTREE endorsed a check from Advanced West in the amount of

$12,015 made payable to Susan Driscoll and addressed to Driscoll Enterprises.

   b. On or about November 18, 2005, defendant SUSAN CRABTREE faxed a bid from "Delta Composites" to NGC for the sale of 85 rolls of 6-inch seamed carbon fiber for $27,795.

   c. On or about November 18, 2005, one of the co-conspirators, defendant SUSAN CRABTREE or defendant MICHAEL CRABTREE, requested Cook to fax a bid from Advanced West to NGC for the sale of 85 rolls of 6-inch seamed carbon fiber at $280 each for a total of $23,800.

   d. On or about November 21, 2005, defendant MICHAEL CRABTREE caused an employee of NGC to fax an award of order to Advanced West requesting the delivery of 85 rolls of 6-inch seamed carbon fiber at $280 each for a total of $23,800.

   e. On or about November 22, 2005, defendant MICHAEL CRABTREE signed a false Advanced West packing slip stating that he had received 85 rolls of 6-inch seamed carbon fiber tape.

   f. On or about November 28, 2005, defendants SUSAN CRABTREE and MICHAEL CRABTREE caused a telephone call to be placed from Advanced West in Santa Ana, California, to American Express in Phoenix, Arizona, requesting authorization for a $23,800 charge to NGC's American Express account.

   g. On or about November 28, 2005, defendants SUSAN CRABTREE and MICHAEL CRABTREE caused an electronic funds transfer in the amount of $23,800 to be made from an American Express account in Phoenix, Arizona, to Advanced West's bank account in Laguna Beach, California.

1       h.  On or about November 28, 2005, defendant SUSAN
2 CRABTREE deposited an Advanced West check in the amount of
3 $21,420 into the OCTFCU bank account.
4       i.  On or about January 16, 2007, defendant SUSAN
5 CRABTREE deposited an Advanced West check in the amount of
6 $63,270 into the OCTFCU bank account.
7 //
8 //
9 //
10 //
11 //
12 //
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

## COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 1343, 2(a)]

8. Paragraphs 1 through 4 and 6(a) through 6(l), set forth in Count One, are realleged and incorporated into these counts as though fully set forth herein.

9. Beginning in or about September 2004 and continuing through in or about February 2007, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants MICHAEL CRABTREE and SUSAN CRABTREE, aka Susan Driscoll, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud NGC as to material matters, and to obtain money and property from NGC by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10. On or about the dates set forth below, within the Central District of California, for the purpose of executing the above-described scheme to defraud, defendants MICHAEL CRABTREE and SUSAN CRABTREE willfully caused and aided and abetted the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | TRANSMISSION |
|---|---|---|
| TWO | 5-18-05 | Telephone call from Santa Ana, California, to Phoenix, Arizona, requesting authorization for a $22,100 charge to NGC's American Express account |
| THREE | 11-28-05 | Telephone call from Santa Ana, California, to Phoenix, Arizona, requesting authorization for a $23,800 charge to NGC's American Express account |

9

| | COUNT | DATE | TRANSMISSION |
|---|---|---|---|
| 1 | | | |
| 2 | FOUR | 6-6-06 | Telephone call from Santa Ana, California, to Phoenix, Arizona, requesting authorization for a $23,800 charge to NGC's American Express account |
| 3 | | | |
| 4 | // | | |
| 5 | // | | |
| 6 | // | | |
| 7 | // | | |
| 8 | // | | |
| 9 | // | | |
| 10 | // | | |
| 11 | // | | |
| 12 | // | | |
| 13 | // | | |
| 14 | // | | |
| 15 | // | | |
| 16 | // | | |
| 17 | // | | |
| 18 | // | | |
| 19 | // | | |
| 20 | // | | |
| 21 | // | | |
| 22 | // | | |
| 23 | // | | |
| 24 | // | | |
| 25 | // | | |
| 26 | // | | |
| 27 | // | | |
| 28 | | | |

COUNTS FIVE THROUGH SEVEN

[18 U.S.C. § 1957, 2(b)]

11. Paragraphs 1 through 4 and 6(m) through 6(o), set forth in Count One, are realleged and incorporated into these counts as though fully set forth herein.

12. On or about the dates set forth below, in Orange County, in the Central District of California, defendants MICHAEL CRABTREE and SUSAN CRABTREE, also known as Susan Driscoll, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted and caused others to conduct the following monetary transactions in criminally derived property of a value greater than $10,000, which property was derived from specified unlawful activity, namely wire fraud.

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| FIVE | 5-20-05 | Deposit of Advanced West check in the sum of $19,669 made payable to Susan Driscoll into Orange County Teacher's Federal Credit Union account |
| SIX | 11-28-05 | Deposit of Advanced West check in the sum of $21,420 made payable to Susan Driscoll into Orange County Teacher's Federal Credit Union account |

//
//
//
//
//
//
//
//

| COUNT | DATED | MONETARY TRANSACTION |
|---|---|---|
| SEVEN | 6-6-06 | Deposit of Advanced West check in the sum of $21,520 made payable to Susan Driscoll into Orange County Teacher's Federal Credit Union account |

                                        A TRUE BILL

                                        /S/
                                        _____
                                        Foreperson

GEORGE S. CARDONA
United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division


CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Major Frauds Section


JILL FEENEY
Assistant United States Attorney
Acting Deputy Chief, Major Frauds Section


DANIEL J. O'BRIEN
Assistant United States Attorney
Major Frauds Section